Essex County Orphans Court—In re Beidelman.

ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of SOLOMON B. BEIDELMAN,
deceased.

**Funeral Benefits—Accounting—Decedent Left "Benefits" in a
Secret Society Which Were Paid to Widow and by Her
Made a Part of His Estate—She Now Prays Its Return
Under the Plea That She Did Not Know it was Her Own—
Such Funds Follow the Contract With the Society—In This
Case it Provided Payment to Widow, and if None, Then to
other Kinsman—Question Turned on the Meaning of "Funeral
Benefits"—Is it Synonymous With Funeral Expenses or Does
it Mean a Beneficial Return to the Beneficiary?—Held, That
the Contention of the Widow Should Prevail.**

On exceptions to account.

*Mr. Charles A. Woodruff,* for the exceptant.

*Messrs. Child, Young & Howe,* for the accountant.

KOCHER, ADVISORY MASTER.

Solomon B. Beidelman, who died on February 17th, 1923,
was, at the time of his death, a member of Anthony Wayne
Council, No. 159, Junior Order United American Mechanics,
Newark, New Jersey. Under the by-laws of said order and
council there became payable at decedent's death the sum of
$1,000. Shortly after the death of decedent the Junior Order
above mentioned gave to Mrs. Ida Lillian Beidelman, the
widow of deceased, a check payable to her order for the sum
of $1,000 due from said order upon the death of the member,
Solomon B. Beidelman, and at the suggestion of her co-
executor the widow endorsed said check and caused the same
to be deposited in the bank account of the estate and there
mingled with the funds of the estate.

In the account of her co-executor of the estate now before
the court, accountant charges himself, among other things,
with the $1,000 in question as a part of the assets of the

estate, and an exception is taken to such accounting on the ground that it was the property of the widow, and that at the time of endorsing said check to the credit of the estate she had no knowledge or information as to whether said funds rightfully belonged to her self or to the estate.

The question to be solved, therefore, is who was entitled to the fund of $1,000 paid by the Junior Order upon the death of its member, Solomon B. Beidelman.

It is settled that the constitution and by-laws of an order of this character constitute the contract entered into between the member and the order. *Radiant Temple, &c., v. William R. Piper, 62 N. J. Eq. 565.* Copies of the constitution and by-laws of the Junior Order, which were stipulated to be true copies, were placed in evidence, and it is from the examination of these documents that the person entitled to the ownership of the funds in question must be determined.

Section 4 of the constitution provides that—

"Twelve months after initiation of a member owing less than thirteen weeks' dues, in the event of his death, such sum as shall be named in the by-laws of each council as funeral benefits [which amount shall not be less than $100] shall be paid to the widow [provided that a certificate has not been granted the member as named in sections 6 and 7 of this chapter].

Then follow provisions for the payment of said sum: If there be no widow it is paid to the children of the deceased; if no child or children, then the sum is to be paid to the parent or parents; if no parent or parents, then to the brothers and sisters; "if there are no relatives as above named the funeral benefits revert to the council."

The real issue raised is the construction of the term "funeral benefits." On behalf of accountant it is insisted that these words should be construed to mean funeral expenses. In other words, that the fund in question was provided by the Junior Order for paying the funeral expenses of deceased. On the other hand, on the part of the exceptant, it is contended that the proper construction to be placed upon the term "funeral benefits" is that it is thereby

intended to designate a beneficial return to the beneficiary, and that it is entirely distinctive from that of funeral expenses.

From the section of the constitution above quoted it would appear that the contention of exceptant should prevail. It will be noticed that that section provides for payment to the widow, if there be one, and if not, among various other blood relatives of the deceased, and concludes with the words "if there are no relatives as above named, the funeral benefits revert to the council," and that there is no suggestion that the council shall appropriate that sum, or any other sum, towards the funeral expenses of deceased. It is further to be noted that this section specifically names the beneficiaries who shall receive the funds.

Recurring to the section of the constitution just quoted, it will be recalled that it alludes to a certificate granted the member in sections 6 and 7 of that chapter. Section 6 provides as follows:

"Section 6. A member may change his beneficiary by making application to the board of managers through his council for permission to do so, provided, however, that said beneficiary must be related to said member by blood * * *."

It is perfectly apparent that this section permits a member to change his beneficiary at will, and is persuasive of an intent that the benefits due upon the death of the deceased member may be paid to any certain designated beneficiary.

Section 7 of the constitution is as follows:

"Section 7. A member wishing his council to see that he is properly buried may apply to the board of managers for a certificate directing the council to take charge of his remains and bury the same as per his instructions in said certificate and pay the balance to his beneficiary as named in section 4 of this chapter. If there are no such beneficiaries the balance will then revert to the council. All applications must be made on the blanks provided by the state council. Attached to same must be a full statement from the member as to the reason for making said application signed by the member. After an investigation by the board of managers, if they are satisfied, they may grant the request * * *."

Construing sections 4 and 7 of the constitution together, it would appear that if there were no relations, and the funeral benefits revert to the council pursuant to the provisions of section 4, and if the member had not applied to the board of managers for a certificate directing the council to take charge of his remains and bury the same as per his instructions, the council would be under no obligation to use the fund in question for burial purposes. This would seem to negative the idea that the primary purpose underlying the payment of the fund in question was to provide a fund with which to pay the expenses of the funeral of the deceased, but it was rather the purpose of the council in adopting the constitution to provide a fund in the nature of insurance for the benefit of the person named as beneficiary either in the constitution itself or designated by the member under section 6 of that instrument. The word "beneficiary" is constantly used in this instrument, and the whole scheme would seem to indicate a beneficial payment and not the matter of burial expense.

There appears to be no reported case directly in point. The case of *Carpenter* v. *Alert Council,* reported in *26 N. J. L. 373,* comes nearest in point. In that case the by-laws provided that the payment shall be made to the widow or near relative of the deceased. There was no widow, and the court construed the meaning of "near relative" to be next of kin, and excluded the administrator or executor of deceased from any claim upon the funeral benefit. It was held, however, that the mere fact that the administrator paid the funeral expenses out of the estate was an irrelevant circumstance; the direction of the constitution and by-laws as to payment being explicit must be obeyed.

The result is that the widow is entitled to the fund in question and that the exception should be sustained, and a decree to that effect will be advised.